UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X   Case No.:

RAWNAQ KHUDAI,

                              Plaintiff,                  **COMPLAINT**

      -against-

                                                  **PLAINTIFF DEMANDS**
AKAMAI TECHNOLOGIES, INC.,                  **A TRIAL BY JURY**
KATHY HORAN, *Individually*,
VIKRAM GUPTA, *Individually*,
LARRY SCHNICKER, *Individually,* and
TOM LEIGHTON, *Individually*

                              Defendants.
---------------------------------------------------------------------X

Plaintiff, RAWNAQ KHUDAI, by and through her attorneys, LAW OFFICE OF YURIY MOSHES, P.C., hereby brings this action against Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA") and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Denied a Reasonable Accommodation**, **Discriminated against** by her employer solely due to her **Disability (Seizures)** and **in Retaliation** for requesting a reasonable accommodation.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the Southern District of New York is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated February 10, 2020 with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff RAWNAQ KHUDAI ("KHUDAI") was a resident of the State of New Jersey and the County of Hudson.

9. That at all times relevant hereto, Defendant AKAMAI TECHNOLOGIES, INC., ("AKAMAI") was a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 352 Park Avenue South, 8th Floor, New York, NY 10010.

10. That at all times relevant hereto, Plaintiff KHUDAI was an employee of Defendant AKAMAI.

11. That all times relevant hereto, Defendant AKAMAI employs more than fifteen (15) employees.

12. That at all times relevant hereto, upon information and belief, Defendant TOM LEIGHTON ("LEIGHTON") was an employee of Defendant AKAMAI holding the position of "CEO."

13. That at all times relevant hereto, upon information and belief, Defendant KATHY HORAN ("HORAN") was an employee of Defendant AKAMAI holding the position of "Director of Solutions Engineering."

14. That at all times relevant hereto, Defendant HORAN was Plaintiff KHUDAI's supervisor and/or had supervisory authority over Plaintiff KHUDAI.

15. That at all times relevant hereto, upon information and belief, Defendant VIKRAM GUPTA ("GUPTA") was an employee of Defendant AKAMAI holding the position of "Senior Director."

16. That at all times relevant hereto, Defendant GUPTA was Plaintiff KHUDAI's supervisor and/or had supervisory authority over Plaintiff KHUDAI.

17. That at all times relevant hereto, upon information and belief, Defendant LARRY SCHNICKER ("SCHNICKER") was an employee of Defendant AKAMAI holding the position of "Human Resources Representative."

18. That at all times relevant hereto, Defendant SCHNICKER was Plaintiff KHUDAI's supervisor and/or had supervisory authority over Plaintiff KHUDAI.

19. That at all times relevant hereto, Defendant AKAMAI, Defendant HORAN, Defendant GUPTA, Defendant SCHNICKER, and Defendant LEIGHTON are collectively referred to herein as "Defendants."

**MATERIAL FACTS**

20. In or around December 4, 2017 Plaintiff KHUDAI began working for Defendants as a "Solutions Engineer II" earning $162,500.00 per year.

21. As the Solutions Engineer II, Plaintiff KHUDAI's responsibilities included but were not limited to: 1) Helping to design solutions for customers' business requirements using

Defendants' services 2) Creating and showing presentations based on the different uses of Defendants' products; and 3) managing customer technical relationships.

22. During her first five (5) months with Defendants, Plaintiff KHUDAI had been a satisfactory employee and received compliments for her work performance.

23. This began to change in May 2018.

24. Around the beginning of May 2018, Plaintiff KHUDAI started suffering from seizures.

25. On or around May 11, 2018, Plaintiff KHUDAI verbally notified Defendant HORAN that she was having a health emergency and needed to go on leave as soon as possible.

26. Defendant HORAN agreed that Plaintiff KHUDAI could begin her leave on Monday, May 14, 2018.

27. Plaintiff officially requested this leave with Defendant SCHNICKER and was granted with a return date of August 6, 2018.

28. Throughout Plaintiff KHUDAI's leave, she stayed in contact with Defendant SCHNICKER both through the phone and through email.

29. The same week that Plaintiff KHUDAI returned to work, she immediately began to feel hostility from Defendants.

30. When Plaintiff KHUDAI returned, she was told by Defendant HORAN that Plaintiff KHUDAI was to be part of a "return to work" program due to her time missed.

31. Defendant HORAN stated that this program was meant to get Plaintiff KHUDAI re-accustomed to the company information.

32. However, this "return to work" program was not in any employment materials signed by Plaintiff KHUDAI at the time of her hire nor was it in the employee handbook.

33. Defendant HORAN also mentioned "performance problems" of Plaintiff KHUDAI from

before her leave.

34. Plaintiff KHUDAI found this strange as there were no performance problems that she was aware of and there was no documentation showing any issues at all. Furthermore, Plaintiff KHUDAI had received very positive verbal feedback from Defendants regarding the multiple presentations that she had done before her leave.

35. When Plaintiff KHUDAI tried to get Defendant HORAN to further explain the supposed "performance problems", Defendant HORAN instead moved to another topic.

36. Another example of hostility from Defendants was the fact that Plaintiff KHUDAI was not allowed to attend any team meetings that occurred during her first week back.

37. Plaintiff KHUDAI found this strange and felt that these team meetings in addition to the "return to work program" would help make her re-accustomed even quicker.

38. Soon after returning from leave, Plaintiff KHUDAI gave two presentations to Defendants with one being on August 9, 2018 and the other on August 14, 2018.

39. She felt confident in her presentations, as they were very similar to presentations that she had given before her leave which had received high praises.

40. However, the feedback that she received was not positive at all. The feedback included items that Plaintiff KHUDAI found as unnecessary such as, "She did not own the presentation" and how she was not explaining particular programs enough but explaining other programs too much.

41. Plaintiff KHUDAI, surprised and worried by the negative feedback called Defendant HORAN and asked, "Am I in danger of being fired?"

42. Defendant HORAN responded, "Not right now, but down the line because everyone has concerns about you."

43. On or around August 21, 2018 Plaintiff KHUDAI gave another presentation to Defendants.

44. The presentation was part of the new hire process and one which Plaintiff KHUDIA had previously given and verbally received high praises for.

45. Once again Plaintiff KHUDAI felt confident about her work and the knowledge she showed during her presentation.

46. Later that day she received an email from Defendant HORAN with feedback from Plaintiff KHUDAI's presentation.

47. The feedback was once again overall negative with unnecessary comments such as Plaintiff KHUDAI should have given a better overview of herself to begin the presentation.

48. Later that afternoon, during an in-person meeting with Defendant HORAN, Plaintiff KHUDAI once again expressed her worry from the unnecessarily negative feedback.

49. Instead of any type of reassurance or advice, Defendant HORAN became very hostile and raised her voice at Plaintiff KHUDAI, telling Plaintiff KHUDAI that she could not help her.

50. Feeling extremely anxious and nervous that her disability would be exacerbated, Plaintiff KHUDAI called Defendant HORAN that evening and requested a work accommodation of working closely with a senior mentor in a less stressful environment.

51. Plaintiff KHUDAI also mentioned to Defendant HORAN that Plaintiff KHUDAI would be open to whatever accommodations Defendants thought would work best for the company.

52. Defendant HORAN told Plaintiff KHUDAI that she would speak to Defendant GUPTA and Defendant SCHNICKER.

53. The next day, August 22, 2018, Plaintiff KHUDAI was called in to meet with Defendants through a video conference call.

54. Plaintiff Khudai felt that the meeting would be to discuss accommodations as she had left

the discussion open to suggestions from Defendants.

55. However Plaintiff KHUDAI quickly realized that the meeting was about Plaintiff KHUDAI beginning a Performance Improvement Plan ("PIP") or signing a Mutual Separation Agreement.

56. The PIP articulated a 30-day plan for Plaintiff to improve alleged performance issues and permitted Defendants to terminate Plaintiff KHUDAI's employment for any reason during the 30-day period or at the end of the 30-day period.

57. Eager to work and show that she could successfully perform her job, Plaintiff KHUDAI felt that she had no other choice but to accept the PIP.

58. When Plaintiff KHUDAI left the meeting with Defendants, she felt a great deal of anxiety and suffered several seizures later that day and the following day.

59. This, in addition to the fear that her illness would be further exacerbated if she continued working led Plaintiff KHUDAI to requesting medical leave on August 24, 2019.

60. Plaintiff KHUDAI was approved for medical leave starting on August 27, 2018 and returned to work November 5, 2018.

61. During the weeks after Plaintiff KHUDAI returned to work, the hostility continued from Defendants.

62. Plaintiff KHUDAI was not allowed to attend any team meetings except for one, her name was removed from the team mailing list, and she experienced a very hostile attitude from Defendant HORAN during multiple meetings including one on or around November 19, 2018, where Plaintiff KHUDAI was yelled at by Defendant HORAN in front of her co-workers.

63. On January 9th, 2019, Plaintiff KHUDAI was notified through a video conference call

followed by an email by Defendant GUPTA that Plaintiff KHUDAI was officially terminated from her position.

64. Plaintiff KHUDAI was notified that the termination was part of a company-wide action and that her position was being eliminated.

65. However, out of all the employees whose employment was terminated, Plaintiff KHUDAI was the only Solutions Engineer terminated in her "New Customer Acquisitions" group of 104 people.

66. Plaintiff KHUDAI was also the only individual contributor, or non-management employee, who was terminated out of her group of 104 people.

67. Furthermore, Plaintiff KHUDAI was the only team member in Defendant HORAN's eighteen (18) member team to be terminated.

68. Soon after her termination three (3) employees were added to Defendant HORAN's team including one with the exact same title as Plaintiff KHUDAI.

69. Defendants' actions and conduct were and are intentional and intended to harm Plaintiff KHUDAI.

70. Plaintiff KHUDAI has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

71. As a result of Defendants' actions, Plaintiff KHUDAI feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

72. As a result of the acts and conduct complained of herein, Plaintiff KHUDAI has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff KHUDAI has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of

enjoyment of life, and other non-pecuniary losses.

73. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff KHUDAI demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendant)

74. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

75. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

76. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff KHUDAI because of her disability.

78. As such, Plaintiff KHUDAI has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by discriminating against Plaintiff and terminating her employment solely because of her disability.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

84. Defendants violated the section cited herein as set forth.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . .”

87. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

88. Defendants violated the section cited herein as set forth.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

89. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility; or

      2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who

      exercised managerial or supervisory responsibility; or

   3.  the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

  c  An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

91. Defendants violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

92.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.  The New York City Administrative Code §8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

94. Defendants violated the section cited herein as set forth.

### JURY DEMAND

95. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by ADA and the NYCHRL by, discriminating against Plaintiff on the basis of her disability, and retaliating against her for complaining of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       May 11, 2020

**LAW OFFICE OF YURIY MOSHES, P.C.**

By:  /s/
Jessenia Maldonado, Esq.
*Attorneys for Plaintiff*
517 Brighton Beach Ave. 2nd Floor
Brooklyn, NY 11235
(718) 504-6090
jmaldonado@mosheslaw.com

EEOC Form 161 (11/16)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Rawnaq Khudai<br>14 West 103rd Street, Apt. 4B<br>New York, NY 10025 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2020-00726 | Auriel Balbuena,<br>Investigator | (929) 506-5281 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Judy A. Keenan,
Deputy Director**

February 10, 2020

Enclosures(s)                                                                      *(Date Mailed)*