UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

RAWNAQ KHUDAI,

        Plaintiff,

-v-

AKAMAI TECHNOLOGIES, *et al.*,

        Defendants.

---------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:

> **REPORT &**
> **RECOMMENDATION**
>
> 20-CV-3686 (JHR) (JLC)

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:  11/01/2023          │
└─────────────────────────────────┘
```

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Jennifer H. Rearden, United States District Judge:**

      Before the Court in this employment discrimination action is a motion by the

Law Office of Yuriy Moshes, P.C. ("LOYM" or "counsel"), former counsel to plaintiff

Rawnaq Khudai ("Khudai" or "plaintiff"), who is now proceeding *pro se*, seeking

attorneys' fees based upon a charging lien pursuant to Section 475 of the New York

Judiciary Law.  LOYM has also moved for sanctions to be imposed against Khudai

pursuant to Rule 11 of the Federal Rules of Civil Procedure.  For the reasons

discussed below, both motions should be granted.[1]

---

[1] As it is unsettled in the Second Circuit whether magistrate judges have the
authority to impose Rule 11 sanctions or determine the amount of a charging lien,
the Court addresses the pending motions by report and recommendation.  *See, e.g.,
Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318
(GBD) (BCM), 2017 WL 3671036, at *17 (S.D.N.Y. July 18, 2017) (Rule 11 sanctions
generally treated as dispositive "out of an abundance of caution") (collecting cases),
*adopted by* 2017 WL 4712639 (Sept. 28, 2017); *Linde v. Arab Bank, PLC*, No. 04-CV-
2799 (BMC) (PK), 2020 WL 5200924, at *1 (E.D.N.Y. Sept. 1, 2020) (attorneys' fees
determinations, including charging liens, generally considered dispositive (first
citing *Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 159 & n.2 (2d Cir. 2006); then

## I. BACKGROUND

The following facts are taken from LOYM's motion papers, as well as from other court filings.[2]  LOYM began representing Khudai on July 18, 2019, prior to the present litigation.  *See* Declaration of Counsel in Support of Motion to Withdraw as Counsel dated October 16, 2022 ("Counsel Decl."), ¶¶ 1–2, Dkt. No. 62. Specifically, "LOYM met with [Khudai], analyzed her case, strategized with [her], represented her before the Equal Opportunity Employment Commission [("EEOC")] and represent[ed] her in the instant lawsuit."  *Id.* ¶ 3.  On November 1, 2019, LOYM filed a complaint on Khudai's behalf with the EEOC and on February 10, 2020, the EEOC issued a Dismissal and Notice of Suit Right.  *See* Letter Motion dated April 7, 2023 ("Charging Lien Mot.") at 2, Dkt. No. 94; *see also* Complaint ("Compl.") ¶¶ 5–6, Dkt. No. 1.  LOYM then filed the present action on May 11, 2020. *Id*.  In December 2021—following discovery, which included the two-day deposition of Khudai—the parties reached a settlement in principle and proceeded to negotiate the specific terms of their agreement.  Dkt. Nos. 39–41; Counsel Decl. ¶ 4.

As the parties were unable to finalize the terms of a settlement agreement, Khudai requested a settlement conference, and a conference was held on July 20, 2022.  Dkt. Nos. 48–52; Counsel Decl. ¶¶ 5–6.  Following the July 20 settlement

---

quoting *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009) (citations omitted))).

[2] The Court takes judicial notice of the docket and the existence of certain filed documents.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

conference, the parties were still unable to finalize their agreement, and at that time Khudai and LOYM's relationship became "irreparably harmed." Counsel Decl. ¶¶ 7–8. As her counsel explained: "In various emails dated between September 28, 2022 [and] October 2022 . . . [Khudai] accused LOYM of [failing to] protect[] her rights, working as Defendants' counsel, and working against her in order to defend Defendants and Prudential, her long-term disability insurance carrier." *Id.* ¶ 9. LOYM stated that due to "the damaged relationship . . . [it] [was] unable to draft a settlement agreement that would satisfy plaintiff." *Id.* ¶ 11. For these reasons, LOYM filed a motion to withdraw as counsel on October 16, 2022, Dkt. No. 60, which was refiled on October 25, 2022. Dkt. Nos. 67–68.

On December 16, 2022, after the parties failed to finalize their settlement, the Court granted LOYM's motion to withdraw and scheduled a status conference on February 1, 2023. Dkt. No. 81. At the conference, the Court confirmed that Khudai would proceed *pro se* for the remainder of the litigation. Dkt. No. 84. The Court also confirmed during the conference that, were a settlement reached, the parties would provide notice to LOYM, which had asserted a charging lien as part of its withdrawal motion and attempt to resolve that claim as part of the settlement. *Id.* On February 13, 2023, defense counsel wrote to the Court that additional time was needed to finalize a settlement. Dkt. No. 86. By order dated March 3, 2023, the Court noted that although defendants had emailed the Court on March 2 to report that the parties had signed a settlement agreement, they nonetheless had

failed to comply with the Court's February 1 order by not informing LOYM of the settlement.  Dkt. No. 88.

On May 19, 2023, Khudai submitted a letter via email to the Court opposing LOYM's motion to enforce its charging lien and accusing the firm of malfeasance, which was filed on the docket with redactions on May 23, 2023.  *See* Order dated May 22, 2023, Dkt. No. 97 (filing unredacted letter under seal); Letter dated May 19, 2023 ("May 19 Letter"), Dkt. No. 98 (redacted letter).  On May 25, 2023, LOYM served Khudai with a "safe harbor" letter pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.  Letter dated May 26, 2023, Dkt. No. 99; *see also* Dkt. No. 106-1.  Khudai responded on June 14, 2023, restating her allegations against LOYM.  Letter dated June 14, 2023 ("June 14 Letter"), Dkt. No. 100.  LOYM filed its motion for sanctions, supporting memorandum, and declaration on July 25, 2023.  Notice of Motion, Dkt. No. 104; Memorandum of Law in Support of Motion for Sanctions ("Counsel Mem."), Dkt. No. 105; Declaration of Counsel dated July 25, 2023 ("Counsel Sanctions Decl."), Dkt. No. 106.  Khudai filed an opposition ("Pl. Opp.") on August 31, 2023.  Dkt. No. 109.  LOYM filed reply papers ("Counsel Reply") on September 14, 2023.  Dkt. No. 110.  Khudai filed a sur-reply ("Pl. Sur-Reply"), without leave from the Court, on September 15, 2023, seeking to have LOYM held "in immediate contempt" and sanctioned.  Dkt. No. 111 at 1.[3]

---

[3] While sur-replies are not permitted without court authorization, *see, e.g., Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023) (collecting cases), the Court has considered Khudai's sur-reply because she is *pro se* and finds it does not change the recommended outcome.

## II. DISCUSSION

### A. Legal Standards

#### 1. Asserting a Charging Lien

"Section 475 [of the New York Judiciary Law] governs attorneys' charging liens in federal courts sitting in New York, and such liens are 'enforceable in federal courts in accordance with its interpretation by New York courts.'" *Ortiz v. Stambach*, No. 16-CV-321 (EAW), 2023 WL 2058075, at *17 (W.D.N.Y. Feb. 17, 2023) (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998)).   Section 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary L. § 475.  A "charging lien may only attach to 'the proceeds' of a party's affirmative recovery." *Hampshire Grp. Ltd. v. Scott James Co.*, No. 14-CV-2637 (JGK) (MHD), 2015 WL 5306232, at *6 (S.D.N.Y. July 27, 2015) (quoting New York Judiciary Law § 475), *adopted by* Order dated January 5, 2016, Dkt. No. 44. "Charging liens attach not at the time of recovery, but upon commencement of the action, effectively providing the attorney with an equitable security interest in any

5

favorable result of litigation." *Innovative Biodefense, Inc. v. VSP Techs., Inc.*, No. 12-CV-3710 (ER), 2020 WL 2317446, at *3 (S.D.N.Y. May 11, 2020) (citations omitted).

"[F]ormer counsel may seek to enforce [its] lien even when permitted to withdraw as attorney of record." *Id.* (quoting *Itar-Tass*, 140 F.3d at 451). Notably, "attorneys who terminate their representation are . . . entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'" *Id.* (ellipsis in original) (quoting *Stair*, 722 F. Supp. 2d at 267).

"Under New York law, '[i]f the [attorney's] discharge is without cause before the completion of services, then the amount of the attorney's compensation must be determined on a quantum meruit basis.'" *Villar v. City of New York*, 546 F. Supp. 3d 280, 295 (S.D.N.Y. 2021) (first quoting *Teichner by Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985); then citing *Mason v. City of New York*, 889 N.Y.S.2d 24, 25 (2009)). "If the attorney had already completed services, however, then the attorney's compensation is determined according to the attorney-client contract." *Id.*

### 2. Rule 11 Sanctions

"Rule 11 sanctions are designed to deter baseless filings." *Goldberger Co., LLC v. Uneeda Doll Co., Ltd.*, No. 16-CV-4630 (AJP), 2017 WL 3098110, at *4 (S.D.N.Y. July 21, 2017) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 369 F.3d 91, 97 (2d Cir. 2004)). Rule 11(b) of the Federal Rules of Civil

Procedure prohibits an attorney or party from presenting to the court "a pleading, written motion, or other paper" if (1) it is being "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) the claims, defenses, and other legal contentions are not "warranted by existing law"; or (3) the factual contentions do not "have evidentiary support." Fed. R. Civ. P. 11(b). Rule 11(c) provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

Rule 11 sanctions apply to *pro se* litigants. *See, e.g., Goodman v. Bouzy*, No. 21-CV-10878 (AT) (JLC), 2023 WL 3296203, at *16 (S.D.N.Y. May 8, 2023) ("[*P*]*ro se* filings do not serve as an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." (quoting *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991) (cleaned up)), *reconsideration denied*, 2023 WL 3949084 (June 12, 2023), *adopted by* 2023 WL 4235851 (June 28, 2023).

When deciding whether to impose sanctions, courts often consider the following factors:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern . . . or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of

7

> the responsible person, is needed to deter that person
> from repetition in the same case.

*Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, No. 11-CV-3979 (CS), 2017 WL
1901969, at *7 (S.D.N.Y. May 9, 2017) (citation omitted).

"[E]ven where a court finds that Rule 11 has been violated, 'the decision
whether or not to impose sanctions is [within] the court's discretion.'" *Tantaros v.
Fox News Network LLC*, No. 17-CV-2958 (GBD), 2018 WL 1662779, at *3 (S.D.N.Y.
Mar. 16, 2018) (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)).
The Court's "broad discretion extends to determining the amount of the award and
including an award of attorney's fees where warranted." *Charles v. Levitt*, Nos. 15-
CV-9334 (PAE) & 15-CV-9758 (PAE), 2016 WL 3982514, at *6 (S.D.N.Y. July 21,
2016) (internal quotation marks omitted) (quoting *Lawrence v. Wilder Richman Sec.
Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010)); *Goldberger Co., LLC*, 2017 WL 3098110,
at *5 ("Sanctions may include 'nonmonetary directives; an order to pay a penalty
into court; or, if imposed on motion and warranted for effective deterrence, an order
directing payment to the movant of part or all of the reasonable attorney's fees and
other expenses directly resulting from the violation.'" (quoting Fed. R. Civ. P.
11(c)(4))).

### B. Analysis

#### 1. LOYM Should Be Awarded Its Charging Lien

In this case, LOYM should be awarded its charging lien as it reached a
settlement in principle—"an affirmative recovery"—to which the charging lien may
attach, *see Hampshire Grp. Ltd.*, 2015 WL 5306232, at *6, and because the Court

permitted LOYM to withdraw as counsel after determining that there were irreconcilable differences between Khudai and LOYM. *See* Order dated December 16, 2022, Dkt. No. 81 (granting motion to withdraw as attorney); *see also* Charging Lien Mot. at 2. This constitutes "good cause," and accordingly LOYM is not precluded from enforcing a charging lien under Section 475 by virtue of its withdrawal.

Khudai objected to the motion to enforce the lien in her May 19 letter. She objects not as a matter of law but based on allegations that she did not sign the retainer agreement to which LOYM refers, and that LOYM (1) improperly filed lawsuits on her behalf against Dr. Orrin Devinsky, a NYU neurologist who treated Khudai until the present lawsuit was filed, and Khudai's ex-husband Mustafa Khafateh; (2) "ruined [her] relationship with [Dr. Devinsky]"; and (3) improperly filed and settled the lawsuit against Khafateh without her consent, which LOYM and Khafateh are "using . . . [to] dispute [her claim] to [the] equitable distribution of marital assets," among other claims. May 19 Letter at 1.[4] These allegations, however, without anything to support them, do not make the charging lien any less valid. *See, e.g., Quinones v. Police Dep't of City of New York*, No. 10-CV-6195 (JGK) (JLC), 2012 WL 2148171, at *7 (S.D.N.Y. Apr. 12, 2012) (charging lien valid where attorney withdrew even though plaintiff "complained about" attorney's conduct during settlement conference and "suggested he might file a grievance against him"), *adopted by* 2012 WL 2149572 (June 13, 2012); *see also Joffe v. King &*

---

[4] It does not appear that the retainer agreement is in the record before the Court.

*Spalding LLP*, 337 F. Supp. 3d 366, 369 (S.D.N.Y. 2018) (charging lien awarded

despite conflicts and "differences in strategy" between client and former counsel),

*aff'd sub nom. Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.*,

827 F. App'x 35 (2d Cir. 2020).

As for the amount of the charging lien, a court looks to "the terms of the

percentage agreement, the nature of the litigation, difficulty of the case, time spent,

amount of money involved, results achieved and amounts customarily charged for

similar services in the same locality." *Pardovani v. Crown Bldg. Maint. Co.*, No. 15-

CV-9065 (SHS), 2023 WL 5744283, at  (S.D.N.Y. Sept. 6, 2023) (quoting *Sutton v.*

*N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006)).

LOYM submits that the lien amount it seeks was specifically set out in the

settlement agreement that it negotiated.  Charging Lien Mot. at 2.[5]  While LOYM

is correct that fees of 40 to 50 of the settlement proceeds are appropriate when the

litigation is complex, lengthy, or requires specialized knowledge, Counsel Mem. at 4

(citations omitted) (collecting cases), Khudai is also correct that a 30 percent fee is

more "typical."  *See* May 19 Letter at 3.  Indeed, courts in this District have

acknowledged that a fee of one-third (33 percent) is typical in most civil rights

---

[5] In its motion, LOYM did not specify the exact amount of the lien "as it may violate
the [p]arties' current confidentiality agreement, which is an essential term of the
settlement agreement."  Charging Lien Mot. at 2 n.1.  It stated in its motion for
sanctions, however, that Khudai has a contractual obligation to pay LOYM a 40
percent contingency fee.  Counsel Mem. at 5.  LOYM further observes that, under
the "lodestar method" (which multiplies the number of hours spent on litigation by a
reasonable hourly rate), Khudai would owe "more than double" what she currently
owes under the settlement agreement contingency.  *Id.*

cases.  *See, e.g., Pardovani,* 2023 WL 5744283, at \*3 (awarding 33 percent contingency fee where agreed-upon fee in retainer agreement was 40 percent and noting that 40 percent is "significantly higher than the typical fee of one-third in civil rights cases").  Those awards, however, were lower because the legal and factual issues "were not inordinately complex."  *Id.* (referring to award at issue and quoting *Wheatley v. Ford*, 679 F.2d 1037, 1041 (2d Cir. 1982)).  Given the present case is not "inordinately complex," (rather, it is a more routine single-plaintiff civil rights action), the Court would otherwise recommend awarding a 33 percent fee.  However, for the reasons set forth in the next section, the Court will instead recommend an award of 40 percent of the settlement amount in order to satisfy both the charging lien and the sanctions sought.[6]

## 2. Rule 11 Sanctions Should Be Imposed Against Khudai

LOYM argues that sanctions are needed to "address the plethora of false allegations" in Khudai's May 19 and June 14 letters to the Court.  Counsel Mem. at 1.  LOYM claims that Khudai was aware that her allegations were false, yet she not only refused to rescind them, but reaffirmed them in her June 14 letter.  *Id.*  LOYM further contends that sanctions are appropriate because Khudai's "sole purpose" in making these allegations is to avoid her contractual obligation to pay LOYM its contingency fee.  *Id.* at 5.  LOYM thus requests that Khudai's arguments against the charging lien be rejected and that the Court award the firm its attorneys' fees in

---

[6] The Court does not specify the recommended award in this Report as it is a percentage of the settlement amount, which is confidential.

connection with both motions. *Id.* at 7. Khudai counters that LOYM "committed blatant and evident legal malpractice," in the handling of her settlement agreement, Pl. Opp. at 1, and she "refuse[s] to retract any of [her] statements." *Id.* at 3.[7] Based on the seriousness of the claims and the lack of evidentiary support for them, the Court concludes that sanctions should be imposed in these circumstances.

Rule 11 requires that any statements or claims are "not being presented for any improper purpose" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1), (3). Although parties "seeking Rule 11 sanctions against another party ha[ve] a high bar to clear," *Tounkara v. Republic of Senegal*, No. 21-CV-8027 (LAK) (RWL), 2022 WL 17826422 (S.D.N.Y. Dec. 20, 2022), *adopted by* 2023 WL 2692434 (Mar. 29, 2023), courts in this District have held that the requirements for sanctions have been met where the conduct had an improper purpose, such as harassment. *See, e.g.,* *Williams v. Off. of Child Support*, No. 21-CV-8235 (PAE) (RWL), 2023 WL 2396354 (S.D.N.Y. Mar. 3, 2023) (criteria for sanctions met where *pro se* plaintiff filed

---

[7] Khudai contends that LOYM "has not refuted any of [Khudai's] statements," Pl. Opp. at 3. However, LOYM has, in fact, refuted Khudai's allegations by filing a motion for sanctions in the first instance, declaring under penalty of perjury that the allegations against the firm are not true, and including evidence in its safe harbor letter that there are no pending lawsuits against Devinsky or Khudai's ex-husband on either the federal court filing system (PACER) or the New York State Courts Electronic Filing System (NYSCEF). *See* Counsel Sanctions Decl. Ex. 1 at 4–7.

multiple actions with same claims "for the improper purpose of harassing
[defendant]"), *adopted by* 2023 WL 3967791 (June 13, 2023).

Although Khudai has not filed multiple actions against LOYM, as in
*Williams*, she has nonetheless harassed LOYM through her repeated claims as she
has continued to make unsubstantiated statements about LOYM and its attorneys
for nearly a year. *See, e.g.*, Pl. Opp. at 3 (alleging, without any factual basis, that
counsel may have "drugged [her] with something akin to a date-rape drug" to get
her to sign the settlement agreement, and that she considered contacting the FBI).
While the Court is mindful that Khudai is "untutored in the law," *Murawski v.*
*Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007), her opposition papers not only
reaffirmed the statements in her May 19 letter after she had been warned about
sanctions, but also added new harmful statements—again without any evidence—
that are just as troubling as the previous ones. Such speculation without any
evidentiary support is prohibited by Rule 11 and warrants sanctions. *See, e.g.,*
*Goldman v. Barrett*, 825 Fed. App'x 35, 38 (2d Cir. 2020) (affirming $10,000
sanction for allegations supported only by speculation).

Having determined that the requirements for Rule 11 sanctions have been
met, the Court turns next to what sanction is appropriate. To do so, the Court
considers the factors listed *infra*, including but not limited to the willfulness of the
conduct; whether the statements were isolated or part of a pattern; the effect of the
conduct on litigation; whether the person has legal training; and the amount needed
to deter the person from repeating the conduct.

13

As to the first two factors, Khudai's statements were willful and persistent. As counsel points out, despite informing her of LOYM's intent to seek sanctions unless she withdrew her statements, Counsel Mem. at 8, Khudai not only repeated her allegations in subsequent court filings but threatened a more "formal and fuller response," including a potential "legal malpractice lawsuit." Counsel Sanctions Decl. Ex. 2, Dkt. No. 106-2. Such unsupported allegations heavily favor the imposition of sanctions. Further, the impact of Khudai's conduct on the litigation is clear as her statements hampered settlement discussions, prolonged litigation, and forced LOYM to resort to motion practice. Moreover, sanctions are needed to deter Khudai from continuing to make such statements, particularly given the adverse impact these statements could have on LOYM. Indeed, these statements have the potential to expose LOYM to penalties far more severe than a reduced charging lien—*e.g.,* disbarment and prosecution—a fact of which Khudai is aware as she has attempted to involve both the New York State Bar Association and the New York City Police Department. *See* Pl. Opp. at 3–4; Def. Reply at 4. Thus, the only remedy sufficient to deter her from continuing to make such misrepresentations is to impose sanctions.

## III. CONCLUSION

For the foregoing reasons, LOYM's motions should be granted and it should be awarded 40 percent of the settlement proceeds to satisfy its charging lien and to address the sanctions it seeks.

14

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections (plus three days because the Report is being mailed to Plaintiff). *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jennifer H. Rearden, United States Courthouse, 500 Pearl Street, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Rearden.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  November 1, 2023
        New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

15