Case 1:20-cv-03686-JHR-JLC                     Khudai v. Akamai Technologies

Honorable Judge Jennifer H. Rearden & Honorable Judge Cott,

I was unable to read docket entry 112 by Judge Cott which recommended that my former counsel Maldonado be granted 40% of the total settlement sum. That document, because of its length and number of details, was and is beyond my ability. However, I am not complaining to the Court about my inability to read that document. I read its conclusion, and I did not consider it worth more effort to object to Maldonado receiving 40%. However, I will reiterate some facts which I will now declare under penalty of perjury.

I declare under penalty of perjury that the following is true and correct:

1. In 2019 I met a man who told me that it was his last day working for the Law Office of Yuriy Moshes.
2. He told me that Jessenia Maldonado was the attorney who I would be working with for my employment discrimination complaint against Akamai and that I would see her the next time.
3. However, he still made me sign a document that same day telling me that I needed to sign it right away if I wanted to work with the law firm for my employment discrimination case.
4. He didn't give me a copy of that document to take with me. He told me that the office copying machine was broken, and I never received the document by email either even though I asked for it.
5. That document was two pages long, and he told me to sign on the second page only.

6. He objected to me writing the date on the second page but I still wrote the date on the second page next to my signature.
7. On another day I met a different man. He, too, told me almost exactly the same things said to me by the previous man I had met.
8. He, too, told me that it was his last day at the Law Office of Yuriy Moshes.
9. He also told me that it was a small law firm and that Jessenia Maldonado was the only attorney who did employment discrimination cases.
10. He also told me that I needed to sign the retainer that same day even though I wouldn't be able to see Maldonado until a different date.
11. He made me sign a document with multiple pages. I wrote my signature and the date on the last page.
12. He, too, didn't give me a copy of that document to take with me. He also told me that the office copying machine was broken, and I never received the document by email either even though I asked for it.
13. On the first or second day when I met Maldonado she made me initial dozens of pages and she made me sign many pages without giving me enough time to read them.
14. Maldonado even covered parts of some pages with her hand when I tried to read them.
15. There were so many papers to turn, sign and initial that my hand became very tired and I did not date each page.
16. Maldonado also kept trying to convince me to file personal injury lawsuits, but I kept reiterating that I would not do that.
17. Maldonado also made me sign numerous papers with the names of many people. I asked her who they were. She told me that it was a big law firm and different attorneys might work on my case, and that I needed to sign a retainer for each of them separately.

18. Maldonado also made me sign documents in what looked like Russian, Spanish, Chinese, Arabic and a couple of other languages.
19. I told her that I didn't know those languages.
20. She replied to me that those pages contained standard jargon about Terms and Conditions and that it was the law firm's policy to make everyone sign those documents.
21. Unfortunately, I signed all the papers which she asked me to sign.
22. Furthermore, in the second half of 2019 (or possibly the first half of 2020) Ms. Maldonado told me that the complaint for EEOC needed to be notarized.
23. I notarized it.
24. I believe that the notary stamped only the last page, not each page of the document.
25. That notarized document was sent to Maldonado.
26. Since approximately October 01, 2022 I have repeatedly been emailing Ms. Maldonado and asking her to email me all material pertaining to me which is in her possession.
27. To this day I have not received from Maldonado correspondence exchanged between the email addresses of employees of Akamai and my own email addresses.
28. I have also not received from Maldonado text messages exchanged between phones/phone numbers of employees of Akamai and my own phone/phone number.
29. I have also not received from her any material pertaining to anything except my employment discrimination case against Akamai.
30. My employment discrimination complaint against Akamai is the only reason I approached the Law Office of Yuriy Moshes. However, I am convinced

that some of the documents which Maldonado made me sign, or to which she attached a page with my signature or initials, had nothing to do with matters related to my employment discrimination complaint against Akamai.

31. Furthermore, even the employment discrimination complaint against Akamai which she submitted to this Court, and possibly also to the EEOC, is not the draft which I had wanted her to submit. I made many attempts to get her to correct the draft but she still submitted an erroneous document to the Court.

32. Furthermore, the settlement agreement which Ms. Maldonado wanted me to sign is very different from the settlement agreement which I signed after I became pro-se and engaged directly with the defendants' counsel. The settlement agreement is confidential so I am not listing the many differences.

33. I am convinced that Maldonado was bribed by one or more third-parties.

34. Both the settlement agreements (the one which Maldonado was pressuring me to sign and also the one which I submitted to the Court after I became pro-se) were drafted while I was cognitively impaired in my ability to handle such a lengthy and detailed document with legalese, and my memory was also medically impaired.

35. I emphasize that cognitive ability to process details such as those in the settlement agreement is different from fluency in reading, writing and speaking English. I was fluent in reading, writing and speaking English but I was cognitively disabled as described and my memory was also medically impaired.

36. Please inform me if Your Honor requires me to submit medical documentation.

37. I request Your Honor to grant me permission to have an addendum no longer than half a page.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of April, 2024, at Newark, New Jersey.

Sincerely,

*Rawnaq Khudai*

Rawnaq Khudai

April 29, 2024

(551)229-5033

rawnaq.khudai@gmail.com

535 Bergen St, Newark NJ 07108